UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| JULIO G. AQUIL, | ) | |
| a/k/a JULIO GUILLERM AQUIL, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 6: 14-230-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| SANDRA BUTLER, Warden, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Julio G. Aquil[1] is an inmate confined by the Bureau of Prisons ("BOP") at the Federal

Correctional Institution in Manchester, Kentucky.  Proceeding without counsel, Aquil has

filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  [Record No. 1]

Aquil challenges his firearm conviction and the 60-month consecutive portion of his sentence

under *Rosemond v. United States*, —U.S. —, 134 S. Ct. 1240 (2014), which holds that, to

aid and abet a firearm offense in violation of 18 U.S.C. § 924(c), a defendant must have

advance knowledge that the firearm will be used or carried.

In conducting an initial review of habeas petitions under 28 U.S.C. § 2243, the Court

must deny the relief sought "if it plainly appears from the petition and any attached exhibits

that the petitioner is not entitled to relief."  Rule 4 of the Rules Governing § 2254 Cases in

the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)).  The

---

1       The Bureau of Prisons ("BOP") identifies this petitioner, BOP Register No. 05671-046, as "Julio
Guillerm Aquil."  *See* http://www.bop.gov/inmateloc/ (last visited on April 20, 2015). Therefore, the
Clerk of the Court will be instructed to list "Julio Guillerm Aquil" as an alias designation for Aquil on the
CM/ECF cover sheet.

Court evaluates Aquil's § 2241 petition under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003), overruled on other grounds, *Jones v. Bock*, 549 U.S. 199 (2007). The Court accepts Aquil's factual allegations as true and construes his legal claims in his favor at this stage of the proceedings. However, following review, Aquil's § 2241 petition will be denied.

## I.

Aquil and co-Defendant Jose Nunez-Hernandez were charged in the United States District Court for the District of Montana with multiple counts of conspiracy to transport and distribute drugs from Los Angeles, California to Billings, Montana. *United States v. Julio Aquil, et al.*, No. 1:97-CR-45-SPW-5 (D. Mont. 1997).[2] Aquil and Nunez-Hernandez were both convicted in August 1998. Aquil was convicted of conspiracy to sell, distribute or dispense controlled substances (methamphetamine) in violation of 21 U.S.C. §§ 841(a)(1); using or carrying a gun during the commission of a crime of violence or a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and aiding and abetting in violation of 18 U.S.C. § 2.[3] [*Id.*, Record No. 296, therein]

On December 10, 1998, the district court sentenced Aquil to a 480-month (40-year) prison term, comprised of a 420-month sentence on Counts 1, 2, and 4; a concurrent 97-

---

2   Aquil's criminal case pre-dated the advent of the PACER federal electronic data-base system. As a result, the Court cannot electronically access and view pleadings or orders filed prior to March 23, 2006 [Record No. 517, therein]. However, Aquil's docket sheet can be viewed electronically.

3   The aiding and abetting charge under 18 U.S.C. § 2 is premised on the *Pinkerton* doctrine which holds that a co-conspirator can be held vicariously liable for reasonably foreseeable substantive crimes committed by a co-conspirator in furtherance of a conspiracy. *Pinkerton v. United States*, 328 U.S. 640, 647–48 (1946).

month sentence on Counts 8 and 9; and a consecutive 60-month sentence on Count 5, which charged Aquil with the § 924(c) offense for aiding and abetting the use or carrying of a gun during the commission of a crime of violence or a drug trafficking crime.  [*Id.*, Record No. 370, therein]  Aquil conviction was affirmed on appeal by the United States Court of Appeals for the Ninth Circuit.  *United States v. Julio Aquil*, No. 98-30336, 202 F.3d 279 (9th Cir. Nov. 10, 1999) (unpublished table decision).

On January 19, 2005, Aquil filed his first motion to set aside his sentence under 28 U.S.C. § 2255.  [*See* Aquil criminal case, Record No. 503, therein.][4]  On March 16, 2005, the district court denied this motion.  [*Id.*, Record No. 504, therein]  The court's order is not electronically accessible, but given the date on which Aquil filed his first § 2255 motion (January 19, 2005), it appears that the district court denied the motion as untimely under 28 U.S.C. § 2255(f).[5]

On November 26, 2007, Aquil filed a "Motion for Relief from Judgment and Dismissal of the Defective Indictment for Lack of Subject Matter, Jurisdiction and Fraud, pursuant to Federal Rules of Civil Procedure Rule 60(b)."  [*Id.*, Record No. 522, therein]  On March 7, 2008, the district court denied Aquil's Rule 60(b) motion.  [*Id.*, Record No. 525, therein]  It concluded that, because Aquil was merely attempting to re-litigate the merits of his conviction and sentence, his Rule 60(b) motion was nothing more than a disguised

---

4    Again, because Aquil's first § 2255 motion pre-dated the advent of the PACER federal electronic data-base system, and because Aquil's § 2255 motion litigation was docketed in his criminal proceeding, the Court cannot electronically access and view any pleadings and orders entered prior to March 23, 2006.

5    Title 28 of the United States Code, section 2255 (f)(1), requires a defendant to file a § 2255 motion within a year of the date on which the criminal conviction becomes final.  As noted, the Ninth Circuit affirmed Aquil's criminal conviction on November 10, 1999, well over four (4) years before Aquil filed his first § 2255 motion.

-3-

second or successive § 2255 motion, and that Aquil had not obtained the United States Court of Appeals for the Ninth Circuit's permission to file a second or successive § 2255 motion.[6] [*Id.*]

Aquil appealed the denial of his Rule 60(b) motion but the Ninth Circuit summarily denied Aquil request for a Certificate of Appealability.  [*Id.*, Record Nos. 526, 545; see also *United States v. Julio Aquil*, No. 08-35300 (9th Cir. Apr. 29, 2009)]   Aquil's projected release date from federal custody is December 16, 2037.  *See* http://www.bop.gov/inmateloc/ (last visited on April 20, 2015).

## II.

Aquil alleges that, under the Supreme Court's holding in *Rosemond*, he is not guilty of aiding and abetting a firearm offense under 18 U.S.C. § 2, and that "vacating his convictions is the proper remedy."  [Record No. 1, p. 5]  To the extent that Aquil invokes the holding in *Rosemond*, he appears to be challenging only part of his sentence (*i.e.*, his consecutive 60-month sentence imposed for aiding and abetting the use of a firearm during the commission of a violent crime or a drug trafficking crime in violation of 18 U.S.C. § 924(c)).   In *Rosemond*, the Supreme Court explained that "[a]n active participant in a drug transaction has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun."  *Rosemond*, 134 S.Ct. at 1249.  A conviction for aiding-and-abetting "requires not just an act facilitating one or another element, but also a state of mind extending to the entire crime."  *Id.* at 1248.  Further, "the intent must go to the specific and entire crime charged."  *Id.*  For example, in *Rosemond*, intent was required for the full

---

6        On July 25, 2008, the district court denied Aquil's reqest for a Certificate of Appealability regarding his Rule 60(b) motion.  [*Id.*, Record No. 540]

scope of a § 924(c) violation (predicate drug crime plus gun use).  *Id.*  The Court explained, "[t]o aid and abet a crime, a defendant must not just 'in some sort associate himself with the venture,' but also 'participate in it as in something that he wishes to bring about' and 'seek by his action to make it succeed.'"  *Id.* (quoting *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949)).

Aquil argues that the evidence produced at trial against him was inadequate to support his § 924(c) firearm conviction.  He contends that the evidence did not show that he knew in advance that his cohorts would use a gun while committing drug trafficking crimes.  Based on this alleged evidentiary deficiency, Aquil argues that his criminal conduct did not satisfy *Rosemond*'s requirements for an aiding and abetting conviction under § 924(c).  Consequently, Aquil claims that he was denied due process of law as guaranteed by the Fifth Amendment to the United States Constitution.  He seeks an order vacating his consecutive 60-month sentence on the § 924(c) firearm conviction, and directing the BOP to immediately release him.  [Record No. 1, p. 11]

## III.

As a general rule, 28 U.S.C. § 2255 provides the proper avenue to challenge a federal conviction or sentence.  Conversely, a federal prisoner may file a § 2241 petition if he seeks to challenge the execution of his sentence (*i.e.*, the BOP's calculation of sentence credits or other issues affecting the length of his sentence).  *See United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001); *see also Charles v. Chandler*, 180 F.3d 753, 755–56 (6th Cir. 1999).  In short, 28 U.S.C. § 2255 provides the primary method for federal prisoners seeking relief from an unlawful conviction or sentence, not § 2241.  *See Capaldi v. Pontesso*, 135

F.3d 1122, 1123 (6th Cir. 2003).   Here, Aquil is not challenging the execution of his sentence, such as the computation of sentence credits or parole eligibility (*i.e.*, issues which fall under the ambit of § 2241).   Rather, he contends that under *Rosemond* his consecutive § 924(c) firearm conviction, which comprises 60 months of his total 480-month sentence, violates his constitutional rights.   Thus, Aquil is challenging the constitutionality of his sentence on Sixth Amendment grounds under § 2241 *via* the "savings clause" of § 2255(e). However, § 2241 is not the proper mechanism for asserting these claims.

A federal prisoner may challenge the legality of his detention under § 2241 only if his remedy under § 2255(e) is inadequate or ineffective.   *See Wooten v. Cauley*, 677 F.3d 303, 306–07 (6th Cir. 2012).   This exception does not apply where a prisoner fails to seize an earlier opportunity to correct a fundamental defect in his conviction under pre-existing law, or actually asserted a claim in a prior post-conviction motion under § 2255 but was denied relief.   *Charles*, 180 F.3d at 756.   However, a prisoner proceeding under § 2241 can implicate the savings clause of § 2255 if he alleges "actual innocence."   *Bannerman v. Snyder*, 325 F.3d 722, 724 (6th Cir. 2003).   "One way to establish factual innocence is to show an 'intervening change in the law that establishes [the petitioner's] actual innocence.'" *Wooten*, 677 F.3d at 307 (quoting *Peterman*, 249 F.3d at 461–62).   This may be demonstrated by showing: (i) the existence of a new interpretation of statutory law, (ii) which was issued after the petitioner had a meaningful time to incorporate the new interpretation into his direct appeals or subsequent motions, (iii) is retroactive, and (iv) applies to the merits of the petition to make it more likely than not that no reasonable juror would have convicted him.   *Id.* at 307–08.

Aquil bears the burden to establish that his remedy under § 2255 is inadequate or ineffective. *Charles*, 180 F.3d at 756. The savings clause may only be applied when the petitioner makes a claim of actual innocence. Claims of sentencing error do not qualify as "actual innocence" claims under § 2241. *See Bannerman*, 325 F.3d at 724; *Hayes v. Holland*, 473 F. App'x 501, 502 (6th Cir. 2012). The savings clause of § 2255 extends only to petitioners asserting actual innocence claims regarding their convictions, not their sentences. *Aquil v. Castillo*, 489 F. App'x 864, 866 (6th Cir. 2012); *Reminsky v. United States*, 523 F. App'x 327, 329 (6th Cir. 2013). Likewise, a remedy under § 2255 is not inadequate if a petitioner either failed to assert a legal argument in a § 2255 motion, or if he asserted such a claim but was denied relief on it. *Charles*, 180 F.3d at 756–58; *Rumler v. Hemingway*, 43 F. App'x 946, 947 (6th Cir. 2002). In short, section 2241 is not an additional, alternative, or supplemental remedy to the one provided in § 2255. *Charles*, 180 F.3d at 758.

Aquil contends that his § 2255 motion was inadequate or ineffective because *Rosemond*, decided long after his § 2255 motion was denied, applies retroactively to him and supports his claim that he was improperly convicted of the firearm offense under § 924(c). Generally, "new decisions are not retroactive, unless the new decision provides a criminal rule of procedure that is of 'watershed' importance or is a substantive change in the law that imposes a new burden on the states or federal government." *Wooten*, 677 F.3d at 308. "[A] decision does not announce a new rule when it is 'merely an application of the principle that governed' a prior Supreme Court case." *Duncan v. United States*, 552 F.3d 442, 445 (6th Cir. 2009) (quoting *Teague v. Lane*, 489 U.S. 288, 307 (1989)).

-7-

"The Supreme Court did not state whether the principles explained in *Rosemond* apply retroactively to convictions that are final under state law." *Berry v. Capello*, 576 F. App'x 579, 592 (6th Cir. 2014).  Aquil was, of course, convicted of federal offenses.  In *Berry*, the Sixth Circuit assumed, without deciding, that *Rosemond* applies retroactively, but nevertheless determined "that the trial evidence supported the jury's determination that Berry possessed a state of mind extending to the entire crime, including the necessary intent to aid and abet felony murder and to aid and abet assault with intent to rob while armed." *Id*.

However, the consensus among district courts which have addressed this issue have determined that, because the holding was dictated by established precedent, *Rosemond* does not apply retroactively to cases on collateral review.  *See*, *e.g*., *United States v. Davis*, 750 F.3d 1186, 1192–93 (10th Cir. 2014) (suggesting prospective application only: "After *Rosemond*, a jury instruction on aiding and abetting § 924(c) should address the defendant's advance knowledge of the gun."); *Watford v. Matevousian*, No. 1:15-CV-5-LJO-MJS, 2015 WL 1498859, at *3 (E.D. Cal. Mar. 31, 2015) (refusing to apply *Rosemond* retroactively to the prisoner's § 2241 petition because the Supreme Court did not identify its holding as being retroactively applicable); *Watford v. Copenhaver*, No. 1:14-CV-615, 2014 WL 4967800, at *2 (E.D. Cal. Dec. 8, 2014) (same); *Montana v. Cross*, No. 3:14-CV-01019, 2014 WL 5091708, at *3 (S.D. Ill. Oct. 10, 2014) (denying § 2241 petition because the petitioner's reliance on *Rosemond* "does not bring his claim within the savings clause," and stating, "The Supreme Court gave no indication that its decision in *Rosemond* should be given retroactive application to a case on collateral review."); *Taniguchi v. Butler*, No. 6:14-CV-120-KKC, 2014 WL 5063748, at *5 (E.D. Ky. Oct. 8, 2014) (denying federal  prisoner's

§ 2241 habeas petition based on *Rosemond* claim); *United States v. Foreman*, No. 02-CR-135-TCK, 2014 WL 4403445, at *1 (N.D. Okla. Sept. 5, 2014).[7]  This Court agrees with the approach taken in these cases and concludes that *Rosemond* does not apply retroactively to cases on collateral review such as the § 2241 petition which Aquil has filed in this proceeding.

Aquil further contends that he could not have aided and abetted the § 924(c) firearm offense committed by Mike LaCelle on May 9, 1997.  [Record No. 1, pp. 8–10]  He alleges that he was incarcerated in a California prison, and had been confined since November 1996. [*Id.*]  Thus, he claims he was not a party to the conspiracy on May 9, 1997, could not have foreseen Mike LaCelle's actions on May 9, 1997, and was too removed from his conspirators' alleged actions to have aided and abetted a § 924(c) firearm offense under the *Pinkerton* doctrine.  [*Id.*]  Under *Pinkerton*, each conspirator is liable for the criminal acts of his co-conspirators if the following conditions are shown: (1) the substantive offense was committed in furtherance of the conspiracy; (2) the offense fell within the scope of the unlawful project; and (3) the offense could reasonably have been foreseen as a necessary or

---

7       *See also Rainwater v. Werlich*, No. 14-CV-761, 2014 WL 4218346, at *2 (W.D. La. Aug. 25, 2014) (finding that § 2241 relief was unavailable through the savings clause of § 2255(e) because *Rosemond* has not been declared retroactively applicable by Supreme Court); *Rodriguez–Pena v. Werlich*, No. 14-CV-994, 2014 WL 4273631, at *2 (W.D. La. Aug. 29, 2014) (relief not available in § 2241 under savings clause of § 2255(e) because the Supreme Court did not make *Rosemond* retroactively applicable); *Minaya v. United States*, 41 F. Supp. 3d 343, 345 (S.D. N.Y. Aug. 19, 2014) (finding that *Rosemond* and another related Supreme court case did not apply retroactively to cases on collateral review); *Gentile v. Fox*, No. 2:14-CV-01726, 2014 WL 3896065, at *9 (C.D. Cal. July 11, 2014) ("The [*Rosemond*] case did not involve an actual innocence claim, but rather merely an instructional error claim, and there is no indication in the decision that the rule declared therein regarding what it takes to aid and abet a § 924(c) offense would apply retroactively on collateral review."); *Martinez v. United States*, No. 3:14-CV-1359-L, 2014 WL 3361748, at *2 (N.D. Tex. July 9, 2014).

natural consequence of the unlawful agreement.  *Pinkerton v. United States*, 328 U.S. 640, 647–48 (1946).

As noted above, the jury convicted Aquil and Nunez-Hernandez of carrying a firearm in relation to a drug trafficking offense under the *Pinkerton* doctrine.  On direct appeal, Nunez-Hernandez argued that his § 924(c) firearm conviction was improper because he had never met the co-conspirator who carried the firearm.  *United States v. Nunez-Hernandez*, 2000 WL 679256, 221 F.3d 1349, at *3 (9th Cir. May 24, 2000) (unpublished table opinion). Rejecting that argument, the Ninth Circuit explained that "[t]he co-conspirator's crime of carrying a firearm was in furtherance of the conspiracy and clearly fell within the scope of the unlawful project - drug trafficking.  Additionally, carrying a firearm is a reasonably foreseeable consequence of unlawful drug activity." *Nunez-Hernandez*, 221 F.3d 1349, at *3.  Further, "the evidence demonstrated that Nunez-Hernandez carried weapons when transporting drugs and currency to and from Montana." *Id.* (citing *United States v. Fonseca-Caro*, 114 F.3d 906, 908 (9th Cir. 1997) (concluding that, under *Pinkerton*, the defendant's carrying of a gun in a similar, earlier transaction made it reasonably foreseeable that the co-conspirator would commit the same act)).

And of equal importance, the Ninth Circuit has already rejected Aquil's arguments regarding the § 924(c) firearm offense on direct appeal.  *United States v. Aquil*, 202 F.3d 279, at *4 (9th Cir. Nov. 10, 1999) (unpublished table opinion).  Rejecting Aquil's arguments that he was not part of the conspiracy after his incarceration, the appellate court noted that "neither the conspiracy nor Aquil's participation in it ended after his arrest in November of 1996."  *Id.*  Several witnesses testified that Aquil continued to direct drug

-10-

trafficking activities after his arrest, that co-conspirators worked out of Aquil's home during this time, and that Aquil "needed drug money to pay for his attorney." *Id.* The Ninth Circuit noted that:

> the evidence was clear that the possession of methamphetamine for distribution, the use of money transfers to facilitate the drug transactions, and the use of firearms in relation to the drug trafficking were all within the scope of the conspiracy and reasonably foreseeable by Aquil. The evidence was overwhelming that Aquil was a principal participant in a drug conspiracy primarily involved in the distribution of methamphetamine . . . . As for the use of firearms in relation to the drug business, the evidence showed that firearms played a regular role in conspiracy's operations. Aquil and Nunez were transporting guns when they were stopped in Nevada. Aquil opened fire on the police at his residence in California when they tried to serve a warrant. Guns were found in the motel room Aquil had rented in Montana. LaCelle testified that he was carrying two firearms in his vehicle "in relation to drug dealing" when he was arrested. Eladio and Angel testified that guns were kept at Aquil's and Gonzalez's homes in Billings. Angel testified that Aquil and Nunez "always had weapons," and that they would exchange guns for drugs in Los Angeles. When Angel was arrested he had a gun at his residence. At one point Gonzalez pointed a gun at LaCelle and threatened to kill him.

*Id.*

A federal court in a post-conviction proceeding can rely on the factual conclusions made by an appellate court in the same case. *Smith v. Snyder*, 22 F. App'x 552, 553 (6th Cir. 2001); *Myers v. United States*, 198 F.3d 615, 619 (6th Cir. 1999). The fact that Aquil may have been in a different location than the individual who actually used the firearm during the commission of a drug trafficking offense on May 9, 1997, does not foreclose the subject conviction because the co-conspirator's crime of carrying a firearm was in furtherance of the conspiracy, clearly fell within the scope of the unlawful project, and was a reasonably foreseeable consequence of unlawful drug activity based upon the factual conclusions

-11-

reached by the Ninth Circuit.  Thus, all three elements of *Pinkerton* were established in Aquil's case.

## IV.

Aquil has not established that his remedy under 28 U.S.C. § 2255 was inadequate or ineffective to challenge his federal detention, nor has he alleged a valid claim of actual innocence which would afford him relief under 28 U.S.C. § 2241.  Accordingly, it is hereby

**ORDERED** as follows:

1.      The Clerk of the Court **SHALL LIST** "Julio Guillerm Aquil" as an alias designation for Petitioner Julio Aquil on the CM/ECF cover sheet.

2.      Petitioner Julio G. Aquil's 28 U.S.C. § 2241 petition for a writ of habeas corpus [Record No. 1] is **DENIED**.

3.      This habeas proceeding is **DISMISSED** and **STRICKEN** from the Court's docket.

This 27th day of April, 2015.



Signed By:

*Danny C. Reeves*  DCR

United States District Judge

-12-